IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TONY R. GRESHAM and BELINDA J. | § | (No. 05-40662-DML-7, |
| GRESHAM, husband and wife, | § | Adversary No. 05-04068-DML) |
| | § | |
| Debtors. | § | |
| _____ | § | |
| | § | |
| WM. CAMERON & CO., a Georgia | § | |
| corporation doing business as | § | |
| CAMERON ASHLEY BUILDING | § | |
| PRODUCTS, | § | |
| | § | |
| Plaintiff/Appellant, | § | |
| | § | |
| VS. | § | NO. 4:06-CV-008-A |
| | § | |
| TONY R. GRESHAM and BELINDA J. | § | |
| GRESHAM, husband and wife, | § | |
| | § | |
| Defendants/Appellees. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the motion of Wm. Cameron & Co., d/b/a Cameron Ashley Building Products ("Cameron"), for leave to appeal.  Cameron is asking the court to give it leave to appeal from a December 15, 2005, order of the bankruptcy court of this district denying Cameron's motion for approval by the bankruptcy court of a settlement reached between Cameron and the debtors of claims asserted in the above-numbered adversary proceeding for denial of dischargeability of Cameron's debt against debtors and for denial of discharge of debtors.  After having considered such motion, the responses thereto, and Cameron's reply, the court has concluded for the reasons given below that the motion for leave should be granted.

I.

Background Facts

A.   Relationship Between the Greshams and Cameron.

Tony R. Gresham and Belinda J. Gresham (the "Greshams") are the debtors in the above-numbered Chapter 7 proceeding and the defendants in the above-numbered adversary proceeding as to which the motion for leave to appeal was filed.  Cameron is one of the Greshams' creditors.  It has a judgment against the Greshams in the principal amount of more than $200,000, which is based on a debt of the Greshams to Cameron arising from a guarantee by the Greshams for payment of debt owed to Cameron by Western Quality Systems, L.L.C. ("WQS").  Tony R. Gresham is the principal and general manager of WQS, and is the one who provided Cameron the documentation and information upon which Cameron relied in deciding to extend credit to WQS based on the guarantee of the Greshams.

B.   Relief Sought in the Adversary Proceeding.

In mid-April 2005 Cameron instituted the adversary proceeding by a complaint asking pursuant to 11 U.S.C. §§ 727(a)[1] that the Greshams be denied a discharge, and, alternatively, for a determination pursuant to 11 U.S.C. § 523(a)(2)[2] that the

---

[1]Title 11 U.S.C. § 727(a) defines the circumstances when a debtor will be denied a discharge in bankruptcy, which include the knowing and fraudulent making of a false oath in the bankruptcy case.

[2]Title 11 U.S.C. § 523(a)(2) defines the circumstances when a discharge in bankruptcy does not discharge an individual debtor from a debt, including the obtaining of credit by use of false statements.

2

Greshams' debt to Cameron is not dischargeable.  The factual
bases of Cameron's requests for relief are that:

(1)  The Greshams gave false value information either in a
personal financial statement they presented to Cameron to induce
Cameron to accept their guarantee for the debt owed to Cameron by
WQS, or in the bankruptcy schedules.  The Greshams represented to
Cameron that listed jewelry had a value of $35,000.00, but showed
on their bankruptcy schedules that its value was no more than
$3,000.00, and they showed in the information presented to
Cameron that their piano had a value of $12,000.00, but showed on
their bankruptcy schedules that it had a value of $3,000.00.

(2)  The Greshams list a tractor in their schedules as one
of their assets, and they seek to cause it to be treated as
exempt property, although the tractor is shown in earlier
documents to be an asset of WQS.

(3)  The Greshams are falsely maintaining in the Chapter 11
case that a firearm, which at first was listed as theirs in their
schedule of exempt property, belongs to their minor child.  This
contention by the Greshams was not made until after they realized
that the firearm would not qualify as exempt property.

(4)  The Greshams provided false information in their
bankruptcy schedules concerning the existence of a secured
interest in certain real property.

(5)  The Greshams fraudulently listed equipment belonging to
WQS in their schedule as exempt property owned by them.  Such
equipment was transferred to the Greshams without consideration,

3

and the Greshams made a false oath or account knowingly and
fraudulently in respect to that matter in their bankruptcy
schedules.

C.   The Bankruptcy Court's Order Governing Disposition of
     the Adversary Proceeding.

     On April 18, 2005, the bankruptcy judge signed an order
providing the parties instructions concerning future handling and
disposition of the adversary proceeding.  Trial was ordered to be
held during the month of September 2005.  Language in the order
reminded the parties of their obligation to "confer to consider
the nature and basis of their claims and defenses and the
possibilities for a prompt settlement or resolution of the case
. . . ."  Apr. 18, 2005, Order at 1 (emphasis added).  Included
in the order was a directive that prior to trial "all parties and
their counsel must certify the full compliance with this Order."
Id. at 2.

D.   The Proposed Settlement.

     On May 27, 2005, Cameron filed a notice in the adversary
proceeding, informing the bankruptcy court that pursuant to the
directive of the April 18, 2005, order the parties conferred to
consider the possibilities of a prompt settlement and that, as a
result, they had reached a settlement "with regard to the claims
of [Cameron] against the [Greshams] in this litigation."  May 27,
2005, Notice at 1-2.  The notice, which was served on the
Greshams, the other creditors of the Greshams, and the Chapter 7
trustee, advised that the parties were preparing, and would file,

4

a stipulation for judgment regarding non-dischargeability of debt
and a judgment denying dischargeability.

On June 27, 2005, Cameron filed a document titled "Motion to
Approve Judgment Denying Dischargeability of Debt and Notice of
Hearing" and another titled "Stipulation for Judgment Regarding
Non-Dischargeability of Debt."  Copies were served on the
Greshams, the other creditors, the Chapter 7 trustee, and the
United States Trustee for the Northern District of Texas ("U.S.
Trustee").  Attached to the motion to approve were copies of the
Stipulation for Judgment Regarding Non-Dischargeability of Debt
and a proposed Judgment Denying Dischargeability.  Cameron
requested by the motion that the bankruptcy court approve, and
enter, the Judgment Denying Dischargeability pursuant to the
stipulation.  The introductory paragraph of this stipulation
recited that the Greshams and Cameron

> [A]gree and stipulate that as settlement of the issues
> which have been raised pursuant to the Complaint to
> Determine Dischargeability of Debt Under 11 U.S.C.
> § 523 and/or to Determine Dischargeability of Debtors
> Under 11 U.S.C. §§ 727(A) [sic], 727(A)(3) [sic] and
> 727(A)(4) [sic] [] Plaintiff Cameron Ashley shall have
> Judgment of Non-Dischargeability pursuant to 11 U.S.C.
> §523(a)(2)(A) . . . .

Stipulation at 1-2.

The benefits to be received by Cameron pursuant to the
settlement were (1) a declaration that the $212,685.01
indebtedness the Greshams owed Cameron was not dischargeable in
the pending Chapter 7 case or in any subsequent bankruptcy, and
(2) a commitment by the Greshams to pay the indebtedness by
making monthly payments commencing on or before June 10, 2005.

The proposed judgment conforms to the language of the stipulation pertaining to non-dischargeability of the debt and payment of the debt on a monthly basis.  No provision is made in the stipulation or proposed judgment for dismissal, or other disposition, of the request Cameron made in its complaint pursuant to § 727 that the Greshams be denied discharge.

During a telephone conference between the court and a representative of the U.S. Trustee and counsel for the Greshams and Cameron, respectively, conducted on May 3, 2006, the court noted the absence in the settlement documents of any provision for dismissal or other disposition of the § 727 claim.  Counsel informed the court that they had an understanding as part of the proposed settlement that a benefit the Greshams were to receive from the settlement was dismissal of the § 727 request for denial of discharge.  Tr. (draft) of May 3, 2006, tel. conf. at 6-7.

E.   <u>Hearing on the Proposed Settlement</u>.

The bankruptcy court conducted a hearing in two sessions (August 9 and October 4, 2005) on Cameron's motion to approve the settlement.  No evidence was received.  During the August 9 session the bankruptcy judge heard argument from counsel for Cameron.  Essentially, the judge informed counsel for Cameron that "as a matter of practice, [he does] not allow settlement of 523 actions when they were combined initially with a 727."  Tr. of Aug. 9, 2005, hearing at 3.  However, the judge agreed to hear further from counsel for Cameron after having received a legal brief from counsel in support of Cameron's motion.

6

The only parties who participated in the hearing on August 9 were counsel for Cameron and the Greshams, respectively.  The bankruptcy judge suggested to a representative of the U.S. Trustee (who happened to be present in the courtroom during the hearing) that she "may at least want to monitor this, and if [the U.S. Trustee] wish[es] to file something, I'd be glad to have it."  Id. at 10.  Consistent with that suggestion, the U.S. Trustee filed on September 22, 2005, its comment opposing the settlement, explaining:

> While there may be circumstances under which the
> Court may approve settlement of a §727 complaint, the
> facts of this case do not warrant such relief.  The
> fact that this complaint could be settled under §523
> instead of §727 is irrelevant.  Cameron's complaint
> raises allegations that, if true, constitute a
> plausible cause of action under §727.  For these
> reasons, Cameron's motion should be denied.

U.S. Trustee's Cmt. on the Mot. to Approve J. Denying Dischargeability of Debt at 3.  No creditor of the Greshams ever opposed, or expressed any concern about, the proposed settlement.

On September 15, 2005, Cameron filed its memorandum in support of the proposed judgment denying dischargeability. Cameron understandably took the remarks made by the bankruptcy judge at the August 9 session to be a statement by the bankruptcy judge that he would never approve settlement of an adversary action in which claims under §§ 523 and 727 are joined, and responded accordingly.  Cameron provided with the response proof that Cameron's attorney had conferred with the Chapter 7 Trustee to determine whether he had an interest in pursuing a § 727 claim against the Greshams based on information the attorney provided

7

to the Trustee concerning discrepancies in values, <u>see</u> <u>supra</u> at 3, and that the Trustee said that he did not intend to file an adversary proceeding or take any action based on that valuation information.  Cameron Ashley's Mem. in Supp. of Stipulated J. Denying Dischargeability, Ex. 2 at 2.  In conclusion, Cameron made the following request of the bankruptcy court:

> Therefore, this Court should review the settlement and approve the settlement under the circumstances. This Court could also seek to impose reasonable conditions on the settlement, such as an additional notice that creditors or the trustee will be allowed to substitute by a specific date.  Such a condition is not required and the Court should hesitate to impose it because no other creditor nor the trustee has objected or sought to be substituted despite the disclosure of the terms of the settlement or the bases for the claims.

Cameron Ashley's Mem. in Supp. of Stipulated J. Denying Dischargeability at 13.

On October 4, 2005, the hearing resumed with counsel for Cameron and the Greshams, respectively, and a representative of the U.S. Trustee present.  Again, no evidence was received.  The bankruptcy judge heard argument from counsel for Cameron.  Upon questioning by the bankruptcy judge, counsel for the Greshams informed him that the Greshams would not conclude a settlement unless the objection to the discharge of the Greshams was dismissed as part of the settlement.  The representative of the U.S. Trustee informed the bankruptcy judge that the U.S. Trustee "opposes the settlement of this case based on public policy reasons."  Tr. of Oct. 4, 2005, hearing at 19.

The comments of the bankruptcy judge during the October 4 session suggest that he did not have an inflexible policy of not approving a settlement of a § 523 action that was joined by the creditor with a § 727 action.  Tr. of Oct. 4, 2005, hearing at 3-4, 19-20, 23-24.  The judge took the matter under advisement.

F.   The Bankruptcy Judge Denies Cameron's Motion.

By letter memorandum dated November 30, 2005, the bankruptcy judge informed the parties that he was denying Cameron's motion without prejudice to settlement of the adversary proceeding "on a basis beneficial to all creditors."  Nov. 30, 2005, letter mem. at third page.  The bankruptcy judge summed up his reasons for the denial by saying:

> To allow a creditor to use freely a right shared by all estate creditors to persuade a debtor to settle with just that creditor would destroy the delicate system of checks and balances respecting the rights under the Bankruptcy Code of debtors and creditors. Section 727 may be invoked by creditors because a trustee may lack the economic resources to seek denial of a debtor's discharge, whereas a creditor may have the economic incentive - and peculiar knowledge - necessary to pursue such a claim.  But § 727 also poses the most potent threat to a debtor's fresh start.  *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1309 (2d Cir. 1996).  Allowing use of that threat by a creditor for its own advantage could lead to serious abuses surely not intended by Congress.  Cf. 18 U.S.C. § 152(6).

Id.  In the course of the letter memorandum, the bankruptcy judge noted that he has allowed settlements in proceedings where claims under both §§ 523 and 575 have been asserted, but only in limited circumstances, such as when the "§ 727 portion of the suit would survive *and* be pursued by another party."  Id. at second page.

On December 15, 2005, the bankruptcy judge issued an order denying Cameron's motion.  The entire text of the order is as follows:

> On October 4, 2005, the Court held a hearing on Wm. Cameron & Co.'s *Motion to Approve Judgment Denying Dischargeability of Debt and Notice of Hearing*.  The issue presented is whether a creditor-plaintiff, having commenced suit against a debtor under 11 U.S.C. §523 and/or 727, may settle the suit for post-petition consideration from the debtor that benefits only the plaintiff-creditor.  Having found that the only benefit of the proposed settlement to the estate and creditors other than the creditor-plaintiff is the withdrawal of the creditor-plaintiff's claim, the Court hereby
>
> ORDERS that Wm. Cameron & Co.'s motion is denied without prejudice to settlement of this adversary on a basis beneficial to all creditors; the Court further
>
> ORDERS that the letter memorandum from the Court dated November 30, 2005 [docket entry 22] shall be incorporated by reference into this order.

Order Denying Mot. to Approve J. Denying Dischargeability of Debt at 1-2.

II.

Cameron's Motion for Leave to
Appeal and Responses Thereto

The text of Cameron's motion for leave to appeal is devoted primarily to argument and authorities in support of the issues Cameron would raise on appeal if leave to appeal from the bankruptcy court's denial of Cameron's motion to approve the settlement were to be granted.  Cameron defined the main issues that it would present on the appeal as follows:

> 1.  Whether an adversary proceeding containing an objection to dischargeability of a debt pursuant to §523 and an objection to discharge pursuant to §727 can be settled and if the §523 claim is settled by a stipulation for judgment of non-dischargeability of the

debt, payment going to only the objecting creditor and
the §727 claim dismissed.

2.   Whether a *per se* practice denying a
stipulation for judgment of nondischargeability of a
debt pursuant to §523 and the dismissal of claims under
§§727(A) [sic], 727(A)(3) [sic] and 727(A)(4) [sic] is
appropriate.

Mot. for Leave to Appeal at 3.

The Greshams responded to the motion for leave, saying that
since they "did sign the settlement agreement, they **do not** oppose
the Motion to Appeal filed by [Cameron]."  Unopposed Resp. By
Defendants/Appellees to Plaintiff/Appellant's Mot. for Leave to
File Appeal at 2.  The U.S. Trustee responded that not only does
he not oppose the motion for leave to appeal, he encourages the
grant of the motion by saying that "a determination of the issue
on appeal would assist in resolving the underlying adversary
proceeding between Cameron and the [Greshams]."  U.S. Trustee's
Resp. to Mot. for Leave to Appeal at 3.

III.

Analysis

During a telephone conference the court conducted on May 3,
2006, with counsel for Cameron and the Greshams, respectively,
and a representative of the U.S. Trustee present, the court
expressed the tentative conclusion that the motion for leave
should be denied.  Upon further study, the court has concluded
that it should be granted.

At the outset, the court notes its concurrence with the
litigants that the ruling of the bankruptcy court in question is
interlocutory, see In re Tidewater Group, Inc., 734 F.2d 794, 796

11

(11th Cir. 1984); In re Merl's, Inc., 481 F.2d 1016, 1018 (9th Cir. 1973), with the consequence that for there to be an appeal leave would have to be granted, see 28 U.S.C. § 158(a)(3) (authorizing a district court to hear appeals with leave of court from interlocutory orders and decrees of the bankruptcy judge). Due to the absence in 28 U.S.C. § 158(a)(3) of a criteria to assist district courts in determining when to grant leave to appeal from an interlocutory order, the court can look to the language of 28 U.S.C. § 1292(b)[3] for guidance.  See Watson v. Boyajian, 309 B.R. 652, 659 (1st Cir. B.A.P. 2004), aff'd 2005 U.S. App. LEXIS 4857 (1st Cir. 2005).

The court has concluded that the appeal will present a controlling question of law as to which there is substantial ground for difference of opinion.  Though the bankruptcy judge's comments concerning the legal principles he thought applicable to the matter of whether the proposed settlement should be approved do not appear to be entirely consistent, one thing that comes through quite clear is that the bankruptcy judge concluded that he could not approve the settlement because the only benefit the

---

[3]Title 28 U.S.C. § 1292(b), which governs appeals of interlocutory orders from district courts to circuit courts of appeals, provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . .

bankruptcy estate and other creditors would receive from the
settlement would be the withdrawal of Cameron's claim from
consideration in the distribution of the bankrupt estate.  The
bankruptcy judge's view of the limits of his discretion in
approving a proposed settlement of the kind presented to him by
the Greshams and Cameron is not without judicial precedent.  See,
e.g., In re De Armond, 240 B.R. 51, 55 (Bankr. C.D. Cal. 1999);
In re Moore, 50 B.R. 661, 664 (Bankr. E.D. Tenn. 1985) (stating
that:  "Tying withdrawal of objections to discharge to the
settlement of other actions is contrary to public policy.  Under
no circumstances, not even where the intent is innocent, may a
debtor purchase a repose from objections to discharge.").

     As was noted in the opinion in In re De Armond, the court
decisions have presented three different approaches to whether
settlement of combined claims under §§ 523 and 727 should be
approved.  240 B.R. at 55-60.  The In re De Armond court
concluded that the majority view is that a § 727 claim can be
settled where the terms of the settlement are fair and equitable
and in the best interests of the estate.  Id. at 56.  However,
that court narrowly interpreted the majority view when it reached
the following conclusion:

     Where a creditor brings claims against a debtor
     under both § 727 and § 523, the plaintiff may not
     settle the claims by dismissing the § 727 claim and
     taking payment individually on the § 523 claim.  Such
     conduct violates the fiduciary duties to the other
     creditors that the plaintiff has undertaken in
     asserting the § 727 claim.  The fiduciary duty
     violation and the resulting tainted settlement can only
     be cured by turning the settlement over to the trustee
     for distribution to all creditors.

13

Id. at 60.

Such a restrictive view of when a proposed settlement should be approved does not seem to give proper weight to the policy of encouraging settlement, or agreed resolutions, of disputes in bankruptcy proceedings.  See In re Mavrode, 205 B.R. 716, 719 (Bankr. D.N.J. 1997) (expressing the rule that "[s]ettlements are generally favored in bankruptcy proceedings, in that they provide for an often needed and efficient resolution of the bankruptcy case.").

A persuasive argument can be made that the reasoning in the Mavrode case should be followed in the instant action, and that the Mavrode outcome provides an acceptable guide for resolving the settlement dispute in this case.  The settlement between the creditor and the debtor in Mavrode was very similar to the proposed settlement here.  The creditor filed an adversary proceeding objecting under § 727 to the debtor's discharge.  To avoid the expense and risk of litigation, the creditor and the debtor agreed to settle both the objection to discharge and the creditor's claim by providing that the debtor's son would supply funds to make payment to the creditor over a period of months, and that, in exchange, the creditor would seek dismissal of his action challenging the discharge.  In the course of approving the settlement, the court thought important to note that all funds to be used in the settlement were non-estate funds.  Although the trustee and the other creditors were served with notice of the settlement, no party objected to the settlement or asked to be

14

substituted for the creditor in pursuit of the objection to the debtor's discharge.  The Mavrode court took the realistic view that the entire creditor body would benefit from the settlement, explaining:

> Since the money will be paid not out of the estate, but from a separate outside source, the creditors will not only not be injured by the proposed settlement, but would benefit from it if there were to be a dividend from which the plaintiff's claim would be excluded.

Id. at 721.  The court gave particular significance to the failure of any other creditor to offer to step in to prosecute the § 727 action, explaining:

> The creditors as well have been afforded ample time to object to the settlement and supplant themselves as plaintiff in order to prosecute the original plaintiffs' claim.  Given the fact that the creditors have chosen not to do so, there would be no benefit inured to the estate in requiring further litigation of the claim.

Id. at 722.

In the instant action, the proposed settlement does not contemplate that money from the bankruptcy estate will be used in payment of Cameron's claim--rather, the payment proceeds are to be from post-petition funds of the Greshams.  Thus, the other creditors will not be injured by the proposed settlement. Instead, they will benefit from it because Cameron's rather significant claim will be excluded from the liquidation distribution.  As was true in Mavrode, the creditors here were afforded ample opportunity to object to the proposed settlement and ask to be substituted as plaintiff as to the § 727 claim, but none did so.  There appears to be no valid reason why the

proposed settlement here should not be approved as it was in
Mavrode.  See also In re Levine, 287 B.R. 683 (Bankr. E.D. Mich.
2002); In re Hass, 273 B.R. 45 (Bankr. S.D.N.Y. 2002); In re
Hayden, 246 B.R. 795 (Bankr. D.S.C. 1999); In re Margolin, 135
B.R. 671 (Bankr. D. Colo. 1992); In re Short, 60 B.R. 951 (Bankr.
N.D. La. 1986).

　　　The appearance in this case is that Cameron made a good-
faith decision to assert both a claim for nondischargeability
under § 523 and an objection to discharge under § 727.  Both the
Greshams and Cameron decided that it would be financially
beneficial if they resolved the disputes by compromise.
Consistent with the instructions they received from the
bankruptcy judge in his April 18, 2005, order, they considered
the possibilities of a settlement, and reached a settlement
agreement that was presented to the bankruptcy court for
approval.

　　　The filing by Cameron of the § 727 action did not prejudice
the bankruptcy estate or the creditors.  It benefitted them by
putting on record facts that might be used to oppose the
discharge of the Greshams.  Nor did Cameron and the Greshams take
action harmful to the other creditors when they reached an
agreement that contemplated dismissal of the § 727 action if the
bankruptcy court were to approve it.  Presumably the creditors,
after receiving notice of the proposed settlement, chose not to
object because they concluded either that they simply did not
want to incur the expense of pursuing such an action or that such

16

an action did not have enough potential merit to justify its
pursuit.  Under those circumstances, there does not appear to be
good reason to force Cameron to continue to pursue the action to
its financial detriment.  Rather, the reasonable course would
seem to be to approve the settlement so that the bankruptcy
estate and the other creditors would benefit from the elimination
of Cameron and the rather significant debt owed to it from the
liquidation process.  Moreover, a settlement of the § 523(a)
action would be beneficial to all concerned because it would
eliminate the expense of litigating that action and would serve
the salutary goal of eliminating the need for the bankruptcy
judge to devote further time and attention to that controversy.

     The views expressed by the court above necessarily are
tentative.  They have been expressed for the purpose of
articulating why the court has concluded that the 28 U.S.C.
§ 1292(b) standard has been met.  For the reasons stated above,
the appeal Cameron proposes to pursue involves a controlling
question of law as to which there is substantial ground for
difference of opinion.  The court concurs with Cameron and the
U.S. Trustee that an immediate appeal from the bankruptcy judge's
December 15, 2005, order denying Cameron's motion for approval of
the settlement will materially advance the ultimate termination
of the adversary proceeding in which the order was entered.

     Therefore,

     The court ORDERS that Cameron's motion for leave to appeal
be, and is hereby, granted, and that Cameron may take on a timely

17

basis the steps necessary and appropriate to pursue an appeal from the bankruptcy judge's December 15, 2005, order.

SIGNED May __26__, 2006.

_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge